OPINION
Leland Sowders appeals from a judgment of the Montgomery County Court of Common Pleas which affirmed the decision of the Ohio Liquor Control Commission ("Liquor Control Commission") to deny his renewal application for a class D-5 liquor permit.
The record reveals as follows. Prior to 1997, Sowders held a class D-5 liquor permit for Mr. Lee's, an adult entertainment bar located at 2073 Republic Drive in Harrison Township, Ohio. When he filed a renewal application for his liquor permit in 1997, the Harrison Township Trustees objected to such renewal. The Superintendent of the Department of Commerce, Division of Liquor Control ("Division") held an objection hearing on August 20, 1997. The Division then conducted an investigation "which included a review of the renewal application, the evidence submitted at the objection hearing, and information gathered from various documents and reports." On October 20, 1997, the Division informed Sowders that it had decided to deny his renewal application.
Sowders appealed the Division's decision to the Liquor Control Commission. The Liquor Control Commission held a hearing on July 15, 1998. The following testified at the hearing: Marlin Flee, Harrison Township Administrator; Randy Duff and Bryan Statzer, deputies with the Montgomery County Sheriff's Office assigned to patrol the area where Mr. Lee's was located; and Greg Menke, a sergeant with the Montgomery County Sheriff's Office and the keeper of the records for liquor permit holders in Harrison Township. Following the hearing, the Liquor Control Commission affirmed the Division's decision to deny Sowders' renewal application by a two-to-one vote.
Sowders appealed the Liquor Control Commission's decision to the trial court. On January 14, 2000, the trial court adopted a magistrate's decision which affirmed the Liquor Control Commission's denial of Sowders' renewal application . Sowders now appeals the trial court's decision.
Sowders raises four assignments of error on appeal, which we will address in an order that facilitates our discussion.
 IV. THE MONTGOMERY COUNTY COMMON PLEAS COURT ERRED WHEN IT FOUND THAT THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
Sowders argues that the trial court's decision to affirm the Liquor Control Commission's denial of Sowders' renewal application was not supported by reliable, probative, and substantial evidence.
In reviewing an order issued by an administrative agency pursuant to R.C. 119.12, a common pleas court must affirm the agency's order if it finds that such order is in accordance with the law and there is reliable, probative, and substantial evidence to support it. Lavery v. Ohio Liquor Control Comm. (1996),112 Ohio App.3d 494, 497, 679 N.E.2d 57, 59. The evidence required by R.C. 119.12 has been defined as follows: "(1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." Our Place, Inc. v.Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571,589 N.E.2d 1303, 1305.
Unlike the common pleas court, our court does not determine the weight of the evidence. Lorain City Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264,267; Equus, Inc. v. Ohio Liquor Control Comm. (June 15, 1999), Franklin App. No. 98AP-892, unreported. We are limited to determining whether the trial court abused its discretion in concluding that there was reliable, probative, and substantial evidence to support the Liquor Control Commission's decision.Paramount Auto, Inc. v. Motor Vehicle Dealers Bd. (1997),118 Ohio App.3d 511, 514, 693 N.E.2d 818, 820, dismissed (1997),79 Ohio St.3d 1445, 680 N.E.2d 1019. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude [was] unreasonable, arbitrary or unconscionable." Atkinson v. International Technegroup, Inc.
(1995), 106 Ohio App.3d 349, 357-358, 666 N.E.2d 257, 263, quotingRohde v. Farmer (1970), 23 Ohio St.2d 82, 87, 262 N.E.2d 685, 689.
In this case, the Division's order stated that Sowders' renewal application was being denied for, inter alia, "good cause" pursuant to R.C. 4301.10(A)(2), R.C. 4303.271(A), and Ohio Adm. Code 4301:1-1-12. R.C. 4301.10(A)(2) provides the Division with the general power to grant liquor permits. R.C. 4303.271(A) states that a permit holder shall be entitled to the renewal of his permit unless the Division rejects the renewal application for "good cause." The Division has the burden of proving, by a preponderance of the evidence, "good cause" for rejecting the renewal application. Marwan, Inc. v. Ohio Liquor Control Comm.
(1994), 93 Ohio App.3d 229, 233, 638 N.E.2d 135, 138; Buckeye Bar,Inc. v. Liquor Control Comm. (1972), 32 Ohio App.2d 89, 90-91,288 N.E.2d 318, 320. Ohio Adm. Code 4301:1-1-12(B) states:
 In determining whether to * * * renew a permit, the [D]ivision shall consider environmental factors affecting the maintenance of public decency, sobriety, and good order, including the number and location of permit premises in the immediate area. If the [D]ivision shall find that no substantial prejudice to public decency, sobriety, and good order will result, it may issue the permit. For the purpose of this rule, however, the [D]ivision shall presume, in the absence of affirmative evidence to the contrary, that the renewal of permits * * * will not prejudice the maintenance of public decency, sobriety, and good order.
The term "good cause" is not defined in the statute or the administrative code. It is well-established, however, that "good cause" for denying a renewal application may be found where the permit premises adversely affect the surrounding environment by interfering with public decency, sobriety, and good order. In re Appeal of Mendlowitz (1967), 9 Ohio App.2d 83,88, 222 N.E.2d 835, 839. As we have stated before, "the permit holder need not, by his own actions, be directly responsible for the offending environmental factors, and * * * adverse environmental factors sufficient to rise to the level of `good cause' for non-renewal may be created by `intoxicated people coming to and from [the permit premises] and destroying property, trespassing, using obscene language or indecent conduct.'" Electrical Mgt. Sys., Inc. v. Liquor Control Comm.
(Sept. 1, 1993) Montgomery App. No. 13843, unreported, quotingWhispers, Inc. v. Liquor Control Comm. (May 11, 1989), Columbiana C.P. No. 88-CIV-590, unreported; see Kayla, Inc. v.Ohio Liquor Control Comm. (1996), 79 Ohio Misc.2d 19, 24,670 N.E.2d 311, 314.
Duff testified that he had been assigned to patrol the district where Sowders' premises were located from March 1996 through July 1997. During that time, he had encountered numerous fights, drug activity particularly in the parking lot adjacent to the premises, and litter in the parking lot. He reported that he had investigated incidents of robbery, public indecency, assault, and other disorderly situations in and around Sowders' premises. He stated that his "beat assignment" included "numerous liquor permit premises" and that Sowders' premises were "[e]xtremely active law enforcement wise." Duff specifically discussed three incidents that he had investigated at Sowders' premises. In September 1996, Duff was dispatched to the premises and arrived to find that a fight between two female patrons had occurred. The victim was intoxicated, less than cooperative, and refused treatment. While on routine patrol in October 1996, Duff was "flagged down" by a female who wanted to report that she had been robbed by one of Sowders' patrons as she had left the premises. In December 1996, Duff was called to the premises by Sowders' employees when an intoxicated man became combative when the doorman refused to allow him admittance into the premises. The man was uncooperative with Duff and other deputies as well, "kicking and thrashing about" while they tried to restrain him, kicking and "shattering the glass" window in the police cruiser door, "slipp[ing] his handcuffs to the front[,] * * * jumping through the broken cruiser window[,]" and fleeing on foot. The deputies chased and "tackle[d]" him, but he "broke control and swung both hands and handcuffs, in a chopping motion," grazing a deputy's face before eventually being subdued. Duff testified that he had also been called to Sowders' premises on numerous other occasions which had not resulted in incident reports, such as unsubstantiated complaints of drug trafficking in the parking lot. He further stated that he had made felony warrant arrests on Sowders' patrons and one employee on the premises.
Statzer testified that he had been assigned to patrol the area encompassing Sowders' premises between March 1996 and June 1998 and that during that time, he had handled incidents of drug abuse in the parking lot, public indecency, bar fights, and assaults on deputies. He stated that there was "lots of trash" in the parking lot especially on the weekends, including broken beer bottles and occasionally hypodermic needles. In March 1996, he was on routine patrol and discovered a van in the parking lot with several people, including one of Sowders' employees, smoking marijuana and drinking alcoholic beverages. Drug paraphernalia was also discovered in the van. Also in March 1996, he was dispatched to Sowders' premises to look for a missing fourteen-year-old female. Upon arrival, he discovered her there, wearing a "thong and a very small revealing bra." The juvenile told him that she had been working at the premises as a dancer for a week and that she had not filled out an application for the job. The manager of the premises told Statzer that the juvenile had completed a job application, but that he could not find it. The manager also stated that he did not have any tax documentation for her. In August 1996, Statzer was dispatched to the premises on the report of three subjects fighting. When he arrived, the subjects were gone, but he found a "fresh" scene with a blood-soaked t-shirt and blood drops on the cement. Statzer further testified that he had been called to the premises on "numerous other instances" and that he had given verbal warnings to people with small amounts of marijuana, open containers, and people slightly under the influence. He concluded that the premises "occupie[d] a fair amount of time that could have been spent on other areas."
Menke testified that as the keeper of records for liquor permit holders in Harrison Township, he had searched police records and had compiled the incident reports that were admitted into evidence. Aside from the reports regarding the incidents,supra, the remaining reports revealed that between June 1996 and June 1997, deputies had made arrests in or around Sowders' premises for the following: two warrants, two incidents of assault, one incident of criminal trespass, nine incidents of drug abuse involving marijuana or crack cocaine, two incidents of possession of drug paraphernalia, and seven incidents of disorderly conduct including public intoxication, urination in public view, and a patron letting the air out of another patron's automobile tire. Menke also testified regarding a printout from the Montgomery County data log of sheriff dispatches to or around Sowders' premises between June 1, 1996 and March 24, 1997, but stated that the log did not include all of the deputies' visits to the premises. He testified that based upon the printout, he could tell that deputies had been called to the premises at least forty-two times during that nine-month period. He testified that aside from keeping the records, he also went on "bar checks" occasionally during 1996 and 1997, where he had personally observed liquor violations, marijuana removed from a person in the parking lot, and litter in the parking lot.
The testimony of these witnesses indicates that Sowders' premises could have been adversely affecting the surrounding environment by interfering with public decency, sobriety, and good order. The evidence is reliable in that there is a reasonable probability that it is true. It is probative in that it bears directly on the issue of the environment surrounding Sowders' premises. It is substantial in that it has weight and importance in deciding the issue at hand. Thus, we will not conclude that the trial court abused its discretion in determining that there was reliable, probative, and substantial evidence to support the Liquor Control Commission's decision.
The fourth assignment of error is overruled.
 III. THE MONTGOMERY COUNTY COMMON PLEAS COURT ERRED WHEN IT USED THE EVIDENCE OF PAST LIQUOR CONTROL COMMISSION VIOLATIONS TO REJECT APPELLANT'S RENEWAL SINCE THE COURT FOUND THAT EVIDENCE OF REGULATION 52 VIOLATIONS WERE NOT PROPERLY BEFORE THE COURT.
Sowders argues that five of his six previous liquor violations involved Ohio Adm. Code 4301:1-1-52 ("Regulation 52"). He claims that because we held that Regulation 52 was facially overbroad in violation of the United States and Ohio Constitutions in Dayton Tavern, Inc. v. Liquor Control Comm. (Aug. 27, 1999), Montgomery App. No. 17651, unreported, the trial court abused its discretion when it considered those previous violations in determining that there was reliable, probative, and substantial evidence to affirm the Liquor Control Commission's decision.
In its decision, the trial court stated as follows:
 The record supplies probative and substantial evidence that [Sowders] has accumulated numerous liquor violations, that criminal activity has taken place on the premises, and that the premises have created an adverse environment. This evidence is sufficient to refuse the renewal of [Sowders'] permit.
* * *
 [A]ll testimony * * * is permitted with the exception of evidence pertaining to any Regulation 52 violation since Regulation 52 was determined to be constitutionally facially overbroad by the Court of Appeals for Montgomery County, Ohio in [Dayton Tavern Inc., supra]. Even with the remaining evidence, this court finds reliable, probative and substantial evidence to support the order of the Ohio Liquor Control Commission.
(Emphasis added.)
Thus, although the trial court did note in its decision that Sowders had accumulated numerous liquor violations, it determined that such evidence was not to be considered. The trial court concluded that, aside from the Regulation 52 violations, there was sufficient evidence to support the Liquor Control Commission's decision. Thus, Sowders' argument that the trial court abused its discretion in considering the violations is not persuasive.
The third assignment of error is overruled.
 II. THE MONTGOMERY COUNTY COMMON PLEAS COURT ERRED WHEN IT DID NOT RULE ON APPELLANT'S ARGUMENT THAT THE LIQUOR CONTROL COMMISSION'S ORDER REJECTING THE RENEWAL OF APPELLANT'S PERMIT VIOLATED THE DOUBLE JEOPARDY PROVISIONS OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE LEGAL PRINCIPLE OF RES JUDICATA.
Sowders argues that evidence of his six previous Liquor Control Commission violations should not have been considered by the Division because such evidence "violate[d] the Double Jeopardy provisions of the United States and Ohio Constitutions." He further argues that the doctrines of resjudicata, collateral estoppel, and merger should have prevented the Division "from using this evidence again for a second time against the permit holder."
Although Sowders raised these issues to the magistrate in his appeal from the Liquor Control Commission's decision, he failed to raise them to the trial court in his objections to the magistrate's decision.
"A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under [Civ.R. 53]." Civ.R. 53(E)(3)(b); State ex rel. Booher v. Honda of Am.Mfg., Inc. (2000), 88 Ohio St.3d 52, 53-54, 723 N.E.2d 571,572-573; Swartzbaugh v. Swartzbaugh (Apr. 14, 2000), Montgomery App. No. 17855, unreported. "The failure to comply with Civ.R. 53 precludes relief from this court in the absence of civil `plain error.'" Anderson v. Steele (Apr. 14, 2000), Montgomery App. No. 17992, unreported. Civil plain error is error which seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the judicial process itself. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,122-123, 679 N.E.2d 1099, 1104; Hulcher v. Hulcher (May 5, 2000), Montgomery App. No. 17956, unreported. We do not believe Sowders' assigned error raises to the level of civil plain error.
The second assignment of error is overruled.
 I. THE MONTGOMERY COUNTY COMMON PLEAS COURT ERRED WHEN IT ALLOWED TESTIMONY BY THE OBJECTORS TO APPELLANT'S RENEWAL BECAUSE THE ORIGINAL RESOLUTION AND ACCOMPANYING LETTER WERE NOT TIMELY FILED VIOLATING THE REQUIREMENTS OF R[.]C[.] 4303.271(B).
In the trial court, Sowders argued that the objection of the Harrison Township Trustees was not timely filed as required by R.C. 4303.271(B). The magistrate declined to reach the question of whether the objection had been timely filed but instead found that the Trustees' objection letter had failed to specify the reasons for such objection as required by R.C. 4303.271(B). Because the objection failed to meet the statutory requirements, the magistrate decided that the Trustees' objection and Township Administrator Flee's testimony should not have been considered by the Division or the Liquor Control Commission. The magistrate found, however, that there was sufficient evidence, aside from the Trustees' objection and Flee's testimony, to conclude that there was reliable, probative, and substantial evidence to support the Liquor Control Commission's decision that there was "good cause," as required by R.C. 4303.271(A), to deny Sowders' renewal application. The trial court agreed with and adopted the magistrate's decision.
Sowders now argues that because the Trustees' objection was excluded, no objection hearings should have taken place and thus all of the testimony from the August 20, 1997 and July 15, 1998 hearings should have been excluded. Because there is no evidence or testimony in the record from the August 20, 1997 hearing, we will determine only whether the evidence from the July 15, 1998 hearing should have been excluded.
R.C. 4303.271 provides that the Division shall renew a holder's permit unless it finds "good cause" for rejecting such renewal, R.C. 4303.271(A), a specific legislative authority objects to such renewal, R.C. 4303.271(B), or the tax commissioner identifies the permit holder as being delinquent in filing any sales or withholding tax returns, R.C. 4303.271(D). In this case, the Harrison Township Trustees raised an objection to the renewal of Sowders' permit pursuant to R.C. 4303.271(B) and requested an objection hearing with the Division. R.C. 4303.271(B) states that a legislative authority, such as township trustees, can raise an objection "for any of the reasons contained in [R.C.4303.292(A)]."
The Division's order stated that it was denying Sowders' renewal application for the following reasons:
 1) The applicant and/or manager for the applicant have operated the liquor permit business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state. R.C. 4303.292(A)(1)(b).
 2) The place for which the permit is sought is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace or good order would result from the renewal of the permit and operation thereunder by the applicant and/or manager for the applicant. R.C. 4303.292(A)(2)(c).
* * *
 3) The Division also denies and rejects the 1997-1998 renewal application for good cause. R.C. 4303.271(A), R.C. 4301.10(A)(2) and [Ohio Adm.Code] 4301:1-1-12(B).
Thus, the Division rejected Sowders' application on three grounds. The first and second grounds related to R.C.4303.292(A) and presumably the Trustees' objection because, although their objection did not specifically state the reasons for such objection, R.C. 4303.271(B) allows trustees to object only for reasons specific in R.C. 4303.292(A). The third ground related to "good cause," pursuant to R.C. 4303.271(A) and substantial prejudice to public decency, sobriety, and good order pursuant to Ohio Adm. Code 4301:1-1-12(B).
The trial court concluded that the Trustees' objection should have been excluded from consideration because it failed to specify the reasons for such objection as required by R.C. 4303.271(B). Aside from rejecting Sowders' renewal application based upon the Trustees' objection, however, the Division rejected Sowders' renewal application for "good cause," an entirely different ground. Because the Division rejected Sowders' renewal application for an independent reason aside from the Trustees' objection, the trial court's exclusion of the Trustees' objection would not have precluded the Division from rejecting Sowders' application for "good cause." Tiger Invest. of Columbus Inc. v.Ohio Liquor Control Comm. (1982), 8 Ohio App.3d 316, 318,457 N.E.2d 320, 323; Leo G. Keffalas, Inc. v. Ohio Liquor ControlComm. (1991), 74 Ohio App.3d 650, 652, 600 N.E.2d 275, 276. Further, the Liquor Control Commission could have conducted its own investigation and called an evidentiary hearing without an objection from the Trustees to investigate whether "good cause" existed from the denial of Sowders' renewal application. SeeTriplett Grille, Inc. v. Ohio Liquor Control Comm. (Dec. 12, 1996), Franklin App. No. 95APE06-712, unreported.We understand that Sowders is arguing that because the Trustees' objection was not adequate, the objection hearing before the Liquor Control Commission should not have taken place, and thus all of the evidence from that hearing should have been excluded from consideration. We do not agree with such argument, however. R.C.4303.271(A) provides that the Division can reject a renewal application for a reason independent of a legislative authority's objection to such renewal. Although the trial court found that the Trustees' objection, which triggered the objection hearing in this case, was inadequate, we do not believe that the law enforcement evidence which was presented at such hearing should have been excluded from consideration. We so conclude because the Division's authority to reject a renewal application is not dependent upon an adequate objection by a legislative authority.
The first assignment of error is overruled.
 ________________________ WOLFF, J.
BROGAN, J. and YOUNG, J., concur.